Bellacosa, J.
(dissenting). On this appeal, defendant Letter-lough disputes the authority of the sentencing court to attach a special condition to his sentence of probation for his conviction, on his guilty plea, in satisfaction of his sixth driving while intoxicated arrest. The court required that, during the five-year probationary period, the license plates of any car Letterlough might drive during his probation should bear the sign "convicted dwi,” but only if Letterlough pursued and obtained reinstatement of his automatically revoked license to drive.
The question of interpretation and application is whether this condition of probation is "reasonably related to [defen *270 dant’s] rehabilitation” (Penal Law § 65.10 [2] [l]) and, therefore, within the sentencing court’s authority under Penal Law § 65.10 (see also, Penal Law § 65.10 [1]). Notably, the sentencing court unquestionably had the power to jail Letterlough for up to four years for the latest in his long history of driving while intoxicated arrests and convictions (see, Vehicle and Traffic Law § 1193 [1] [c]; Penal Law § 70.00 [2] [e]). Instead, the sentencing court granted the defendant’s request for probation.
We are convinced that the rehabilitation-based sentencing authorization of Penal Law § 65.10 gives the court the discretionary authority, in a recidivistic case such as this, to impose and particularize the probation condition at issue. The punitive aspect and the alleged potential "stigma” or "heightened scrutiny” that could be associated with this reasonable condition should not create, in fact or as a matter of law, an absolute bar to such an appropriate, particularized rehabilitative probation condition.
Under the facts of this case, the sentencing court’s imposition of the challenged condition, after careful consideration of defendant’s woeful history and directly relevant circumstances, was "reasonably related” to defendant’s possible rehabilitation, consistent with Penal Law § 65.10. Rehabilitation and punishment are not mutually exclusive goals or concepts in these circumstances, either under the governing statute or under progressive penological theory and practice (see, generally, Filcik, Signs of the Times: Scarlet Letter Probation Conditions, 37 Wash UJ Urb & Contemp L 291). Consequently, we respectfully dissent and vote to affirm the order of the Appellate Division, which had affirmed the sentencing court’s conditional probationary alternative to defendant’s incarceration.
The arrest, which has now led to this appeal, is defendant Letterlough’s sixth alcohol-related arrest. In 1971, Letterlough pleaded guilty to driving while impaired and received a fine; the arrest was for driving while intoxicated. In 1972, he again pleaded down to guilty to driving while impaired, after a driving while intoxicated arrest; his license was suspended and he paid an increased fine. In 1973, he was at it again and was again caught. He pleaded guilty to the driving while intoxicated charge and was fined $100. Another driving while intoxicated arrest in 1973 led to a guilty plea to the charge as a felony, for which he was sentenced to 90 days in jail. The record reflects no criminal adjudications from that point until 1985 when, after being arrested for driving while intoxicated, *271 he pleaded guilty to the charge as a misdemeanor. He was placed on probation for three years and paid a $350 fine.
On September 21, 1991, Letterlough was arrested for the felony now at issue, when officers observed him driving his vehicle directly into oncoming traffic. He had a blood alcohol level of .139 and was charged with driving while intoxicated. On December 10, 1991, Letterlough pleaded guilty in Nassau County Court to operating a motor vehicle while under the influence of alcohol as a felony (Vehicle and Traffic Law § 1192 [2]; § 1193 [1] [c]). On January 22, 1992, County Court sentenced him to probation for five years and a fine of $500; his license was automatically revoked in accordance with Vehicle and Traffic Law § 1193 (2) (b). The court directed Letterlough to obtain alcohol treatment, should the Department of Probation require it (see, Penal Law § 65.10 [2] [e]). The sentencing court recited on the record that the incarceration and fines imposed on Letterlough for his many prior alcohol-related convictions had self-evidently not succeeded in rehabilitating his conduct and attitude about driving and drinking. The court thus attached the "convicted dwi” license plate condition to his probation. Letterlough accepted the special condition, under protest; expressly declined the court’s offer to withdraw his guilty plea; and appealed the sentence. Thus, he conjures up the apt axiom of one having one’s cake and eating it, too.
The Appellate Division affirmed, stating that no statutory or constitutional protection was violated by imposing the condition of probation (205 AD2d 803, 804). A Judge of this Court granted Letterlough this further appeal.
The Legislature gives sentencing courts their range and scope of permissible conditions of probation in Penal Law § 65.10: *272 The sentence of probation " 'is a method of offering an offender an opportunity to rehabilitate * * * without institutional confinement, under the supervision of a probation officer and the continuing power of the court’ ” (Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 65, at 204 [emphasis added], quoting Penal Law § 65.00, and citing Commn Staff Notes reprinted in Proposed NY Penal Law [Study Bill, 1964 Senate Int 3918, Assembly Int 5376] § 25.00, at 260). Section 65.10 of the Penal Law lists a nonexclusive set of permissible conditions which can be imposed with probation, and then grants a catch-all authority to the court to impose conditions, so long as they are "reasonably related to [defendant’s] rehabilitation” (Donnino, op. cit, at 208; Penal Law § 65.10 [2] [l]; see also, Penal Law § 65.10 [1]).
*271 "1. In general. The conditions of probation * * * shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him [or her] to do so.
"2. Conditions relating to conduct and rehabilitation. When imposing a sentence of probation * * * the court * * * may, as a condition of the sentence, require that the defendant: * * *
"(l) Satisfy any other conditions reasonably related to his [or her] rehabilitation” (emphasis added).
*272 Defendant Letterlough argues that the specially suited probation condition imposed for his conviction and criminal record — affixing a "convicted dwi” notation to the license plates of any car he might drive during the probationary period — is not reasonably related to rehabilitation. Finding the condition "in large part” punitive, the majority conclude that the condition can serve no rehabilitative purpose (majority opn, at 266). We disagree. In the most practical terms, defendant might refrain from a given temptation and get in the habit of not drinking and driving, precisely because such a legend might subject Letterlough to heightened scrutiny by civilian drivers at risk and law enforcement personnel (compare, Ayres, Big Gains Are Seen in Battle to Stem Drunken Driving, NY Times, May 22, 1994, section 1, at 24, col 2 [Jay Winsten, director of the Harvard Center for Health Communication, stating that it is the knowledge that they are under close police scrutiny that has caused younger drivers to choose designated drivers]). Contrary to the majority’s view, on this basis alone, the statutory prerequisite is met, as applied to this case (see, Penal Law § 65.10 [2] [l]; [1]).
We respectfully disagree with the majority’s proposition that the probation condition at issue, under the circumstances of this case, cannot qualify as rehabilitative under the pertinent authorizing statute (majority opn, at 265). The sentencing environment does not abide a theoretical purity that would cabin "punishment” and "rehabilitation” into such discrete, mutually exclusive universes. In the complex world of penology, sociology and human behavior, one could hardly imagine the actuality of a purely rehabilitative condition, no less *273 countenance a legal principle that would require such unattainable segregation. Indeed, the majority admit as much, recognizing the "inherent overlap and the difficulty in drawing lines between rehabilitative and punitive or deterrent sanctions” (majority opn, at 265). Notwithstanding this acknowledgement, the majority cursorily conclude that the Legislature could not have intended punishment or deterrence as goals of probation (majority opn, at 265). Curiously, they do so, even recognizing that certain enumerated probation conditions expressly authorized by the Legislature have "punitive and deterrent” effects (majority opn, at 264-265).
Contrary to the view propounded by the majority, the Legislature did not bar sentencing courts from imposing probation conditions which have some punitive or deterrent consequences. Moreover, the fine judicial line that the majority draws between "unpleasant restrictions on the probationer’s freedom * * * [that] have incidental punitive and deterrent effects,” which they find permissible (majority opn, at 264-265), and those which are "overshadow[ingly]” of a "punitive and deterrent nature” (majority opn, at 266) and, hence, impermissible, is simply unsupported by the Legislature’s broad grant of discretion to the sentencing court. One of the long-recognized, accepted goals of punishing unlawful behavior is to provide an incentive for the offender to reform and behave (Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing — Are They Constitutional% 93 Dick L Rev 759, 780-781). The legislative sentencing prescription in Penal Law § 65.10 — that the condition be reasonably related to rehabilitation — contains no express or implied prohibition against some punitive or deterrent consequence. Thus, the punishment and rehabilitative features of this probation condition may lawfully coexist.
Instead, the rule emanating from this case effects a sentencing regression, which is further compounded by restricting the sphere of permissible rehabilitative conditions to only those which would address and cure defendant’s alcoholism (majority opn, at 264). Curbing alcoholism or drinking — the "root” causes of defendant’s persistent criminal conduct — is not the only "rehabilitative” goal under Penal Law § 65.10. Rather, when one addresses the conduct at issue here — defendant’s drinking and driving — one immediately and naturally recognizes that a reasonable condition which might induce defendant to refrain from driving while intoxicated is, in part at least, "rehabilitative” within the meaning of Penal Law *274 § 65.10 (see, Filcik, Signs of the Times: Scarlet Letter Probation Conditions, 37 Wash UJ Urb & Contemp L 291, 307-308 [stating that where statutes provide that sentencing courts may impose conditions "reasonably related to (defendant’s) rehabilitation,” "(t)his * * * allows the trial judge to create and impose individualized conditions, such as 'scarlet letter’ conditions,” with the court’s discretion being "limited only by the 'reasonableness’ requirement” — namely, that the special conditions be "careful(ly) plann(ed) to meet the defendant’s needs”; citing as examples of such reasonable conditions the "heightened scrutiny” type of conditions — publishing apologies in the newspaper, wearing taps on the bottom of shoes, affixing "DWI” bumper stickers to cars]; Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing— Are They Constitutional?, 93 Dick L Rev 759, 780 [stating that "(t)he theory of rehabilitation focuses on providing the offender with appropriate treatment in order to modify his antisocial behavior into acceptable conduct” (emphasis added)]).
Penal Law § 65.10 even specifies that conditions of probation "shall be such as the court, in its discretion, deems reasonably necessary to insure that the defendant will lead a law-abiding life or to assist him [or her] to do so” (Penal Law § 65.10 [1]). Applied to the instant case, that expansive, preambled direction is not about the disease of alcoholism, but about criminal conduct and prevention of it by changing criminal propensities. The Penal Law does not criminalize drinking; nor is it a crime to have a drinking problem. The crime is driving while intoxicated. Consequently, this defendant particular, narrowly tailored condition should unquestionably qualify on this record as "reasonably related” to rehabilitation and reasonably necessary to help defendant start being "law abiding” (Penal Law § 65.10; see also, Kelley, Sentenced to Wear the Scarlet Letter: Judicial Innovations in Sentencing — Are They Constitutional?, 93 Dick L Rev 759, 781 [stating "(w)arning signs act as a 'Pavlovian’ behavior modification technique. Each time the offender encounters the sign, he is cognizant of his activity and the illegality of that behavior. The sign reinforces upon the offender that this behavior is unacceptable * * * (and that) society( ) (is) determin(ed) to see this behavior condemned”]). The majority expression and analysis inappropriately segregate the prohibited combined drinking and the driving, thus ignoring the criminal component to which the rehabilitative probation condition is reasonably directed.
The sentencing court’s decision in the instant case is buttressed by the fact that other, more traditional, sanctions *275 failed repeatedly with this defendant. We know he was caught for six driving while intoxicated incidents over the last 20 years. How often he has driven under the influence of alcohol without being caught and taken off the road is unknown. The majority pay little heed to the defendant’s felony-level conduct and six-time driving-while-intoxicated arrests as not constituting " 'a serious threat to the public’ ” (majority opn, at 265). To the contrary, however, defendant’s criminal record is certainly not very reassuring to the public or to a sentencing Judge, who wished to retain some measure of control while allowing defendant to stay out of jail (see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 65, at 204 [noting that probation subjects defendant to the " 'continuing power of the court’ ”]). Indeed, the sentencing court noted that the usual and available sanctions had not succeeded in altering defendant’s illegal and antisocial dangerous drinking and driving habits. The defendant nitpicks at the court’s statement on the record, arguing that the court was motivated by public safety concerns. First, there is nothing inherently wrong about that. Besides, even if this part of the court’s rationale were questionable, the court also explicitly recited defendant’s failure at all other rehabilitative modes of sentencing, including jail and fines. The court then stated that it imposed the special condition as a means to help defendant overcome his dangerous drinking and driving problem and propensity. That is record-based satisfaction of the statute’s rehabilitation hook.
Our rationale, which would endorse the sentencing court’s particular sentence under these circumstances, also finds support in some precedents from other jurisdictions. In Ballenger v State (210 Ga App 627, 628-629, 436 SE2d 793, 794-795), the Georgia Court of Appeals upheld the trial court’s imposition, as a condition of probation, that defendant wear a fluorescent pink plastic bracelet imprinted with the words "d.u.i. convict.” The court’s ruling rested predominantly, if not exclusively, on the rehabilitative aspect of the condition:
"Being jurists rather than psychologists, we cannot say that the stigmatizing effect of wearing the bracelet may not have a rehabilitative, deterrent effect on [defendant]. * * * Certainly the fines and/or incarceration this defendant received in connection with his numerous previous driving under the influence and habitual violator convic *276 tians did not succeed in rehabilitating him” (210 Ga App, at 629, 436 SE2d, at 794-795).
There, as here, the repeated offenses by defendant and the history of traditional sanctions that simply did not succeed in rehabilitating him warranted imposition of the more innovative rehabilitative condition (contrast, People v Johnson, 174 111 App 3d 812, 528 NE2d 1360 [invalidating condition that defendant place mug sheet and apology in paper where defendant had no prior criminal record]).
The Florida District Court of Appeal has also held that potentially stigmatizing probation conditions are not fundamentally contradictory to rehabilitative goals (Lindsay v State, 606 So 2d 652; Goldschmitt v State, 490 So 2d 123). In Lindsay v State (supra), the court upheld, as a condition of probation, the requirement that defendant place an ad in the newspaper consisting of defendant’s mug shot, name, and caption "dui — convicted” (606 So 2d, at 654, 656-657, supra). The court specifically rejected defendant’s argument that the potential resulting stigmatization contravened the rehabilitative purpose of the probation statute. To the contrary, the court found that the "deterrent, and thus the rehabilitative, effect of punishment may be heightened if it 'inflicts disgrace and contumely in a dramatic and spectacular manner’ ” (id., at 656, quoting United States v Anderson Co., 698 F2d 911, 913 [8th Cir]; see also, Goldschmitt v State, 490 So 2d 123, supra [Florida District Court of Appeal, upholding as "rehabilitative” a condition of probation that defendant’s vehicle bear a bumper sticker reading "convicted d.u.i. — restricted license”]).
While these courts have upheld conditions far more intrusive than the one at issue here, and while we do not broadly approve such sanctions, the reasoning remains instructive. These cases support the core rationale that (1) any condition of probation must "bear some relationship to the nature of the offense of conviction and should have some reasonable rehabilitative basis” (Goldschmitt v State, 490 So 2d, at 125, n 3, supra); and (2) punitive aspects of a probation condition are not, as a matter of law, fundamentally contradictory to rehabilitative goals.
Moreover, the instant case does not present the situation where an overly broad, peculiarly personal, or onerous condition has been imposed (see, e.g., People v Hackler, 13 Cal App 4th 1049, 16 Cal Rptr 2d 681 [invalidating probation condition *277 requiring defendant to wear T-shirt with bold statement of his felony theft probationer status at all times while defendant was outside his living quarters]). The probation condition at issue here affects defendant only in the definitive and distinctive category of human activities to which defendant’s conviction pertains, namely, operating a motor vehicle if he gets his license back. Only if defendant pursues reinstatement of his driving privileges during the probationary period does the condition of probation ever spring into being. Thus, this condition of probation does not encompass areas of privacy unrelated to the offense; nor does the condition impose constraints on some basic right or ability to function in society (contrast, People v Hackler, supra). The condition, tailored directly to the activity of this defendant’s repeated illegal and antisocial conduct, is designed to and may assist him in starting to lead a more "law-abiding life” (see, Penal Law § 65.10 [1]).
In stark contrast to the empirically irrefutable threat posed by drunk drivers, the probation condition at issue poses none of the danger to the public posited by the majority (majority opn, at 267, 268). The spectre of flying accessories or distractive special plates, in any event, hardly compares to the dangers from incorrigible drunk drivers, who are responsible for causing an alcohol-related death every 20 minutes (see, Landstreet, The Drinking Driver: The Alcohol Safety Action Programs, at 3-4 [1977]). In jurisdictions that have expressly authorized comparable probationary conditions, or where the courts have upheld such conditions under general grants of authority, these speculative concerns have been given no credence. Moreover, they simply have no bearing on the question of the discretionary authority of sentencing courts to rule in accordance with legislatively delegated power.
Most importantly, too, the issue is not whether each of us would personally favor or impose such a condition if acting as a sentencing Judge. That is simply not the question before us. The only issue we face is whether the Legislature has allowed sentencing Judges discretion in an appropriate case to impose such conditions. We conclude that it did and that, under these particularly egregious circumstances, the sentencing court did not abuse its discretion.
In using generously appropriate discretionary phraseology, the Legislature contemplated that sentencing courts would fashion conditions of probation based on the particular cir *278 cumstances of a defendant’s record. Defendant’s per se challenge, upheld by this Court, contradicts that legislative mandate and, instead, handcuffs the sentencing courts, including in cases where traditional sentencing approaches have been repeatedly tried and failed. If statutory construction compels such a result, then the solution for the future is simple: jail. Thus, defendant’s victory here is a defeat for progressive sentencing for defendants down the road. Jail and regressive sentencing practices are clearly not what the Legislature had in mind by enacting Penal Law § 65.10 (cf., Mem of NY City Mayor Koch supporting L 1978, ch 500 [statute regarding conditioning probation on performing community service work], Bill Jacket, L 1978, ch 500 [noting concerns motivating and justifying such condition, including "current lack of alternatives to short but costly jail sentences”]).
The majority nullify the probation condition at issue on absolute, per se, matter of law bases and diminish the authority invested in sentencing courts by the Legislature. The striking irony is that while the Legislature in this instance has expanded judicial sentencing discretion (contrast, Penal Law § 65.10 [1] [2], [l] with Penal Law § 70.04 [2], [3]; Penal Law § 70.06 [2], [4]), the Judiciary itself withdraws from sentencing courts the discretionary flexibility to impose reasonably related conditions to probation that the sentencing court and Appellate Division found reasonably necessary to assist or insure a law-abiding turnaround by this defendant.
Chief Judge Kaye and Judges Simons, Smith and Ciparick concur with Judge Titone; Judge Bellacosa dissents and votes to affirm in a separate opinion in which Judge Levine concurs.
Order reversed, defendant’s plea vacated and case remitted to County Court, Nassau County, for further proceedings in accordance with the opinion herein.